UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANTEA COOPER,<br>CDCR #BT-9633,<br><br>                        Plaintiff,<br>vs.<br>Dr. NICHOLAS,<br><br>                        Defendant. | Case No.: 24-cv-01585-WQH-SBC<br><br>**ORDER GRANTING PLAINTIFF LEAVE TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)(ii) AND 28 U.S.C. § 1915A(b)(1)**<br><br>**[ECF Nos. 2, 3]** |

HAYES, Judge:

    Before the Court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983 by Plaintiff Dantea Cooper, a prisoner at Calipatria State Prison ("CAL"), who is proceeding without counsel. (ECF No. 1.) Plaintiff seeks $10,000 in punitive damages from a physician who he claims provided inadequate medical care during his pretrial detention in the San Diego County Jail. (*Id.* at 2–3, 7, 8.)

    Plaintiff has not prepaid the filing fee required by 28 U.S.C. § 1914(a) to commence a civil action, but instead has filed a Trust Account Withdrawal Authorization and certified copies of his prison trust account statement which the Court together construes as a request to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF Nos. 2, 3).

For the reasons explained, the Court **GRANTS** Plaintiff leave to proceed IFP, but **DISMISSES** his Complaint *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) because it fails to state a claim upon which relief may be granted.

## I. LEAVE TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' … the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners: under the current version of the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.'" *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)–(2)).

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for … the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Using this financial information, the court "shall assess and when funds

---

[1] In addition to the $350 statutory fee, civil litigants filing suit are required to pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The administrative portion of the fee does not apply to persons granted leave to proceed IFP. *Id.*

exist, collect, … an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.'" *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). Thus, while prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1)–(2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Plaintiff has submitted a signed trust account withdrawal authorization, together with copies of his CDCR Inmate Statement Report and a prison certificate issued by a CAL Accounting Supervisor attesting to his income and assets. (ECF Nos. 2, 3.) *See also* S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show Plaintiff maintained an average monthly balance of $8.21 and had the same average monthly deposits credited to his account over the 6-month period immediately preceding the filing of his Complaint. At the time of filing, however, Plaintiff's available balance was only $0.15. (ECF No. 3 at 1.)

Based on this accounting, the Court **GRANTS** Plaintiff leave to proceed IFP and assesses an initial partial filing fee of $1.64 pursuant to 28 U.S.C. § 1915(b)(1). However, this initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on "failure to pay ... due to the lack of funds available to him when payment is ordered."). Pursuant to 28 U.S.C. § 1915(b)(2), the CDCR or any agency later having custody must forward payments to the Clerk until the $350 statutory fee is paid in full.

## II. SCREENING

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a preliminary screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion found frivolous, malicious, failing to state a claim, or seeking damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is to 'ensure that the targets of frivolous and malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).").

Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *Wilhelm*, 680 F.3d at 1121. A complaint fails to state a claim if it lacks a "cognizable legal theory" or "sufficient facts … to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe*

*v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quote marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.     Factual Allegations**

Plaintiff alleges that while he was held in the San Diego Central Jail awaiting trial in February 2023, he made several complaints to unidentified nurses about "flexing chest pain." (ECF No. 1 at 3.) Met with "dismissive reactions from medical staff," Plaintiff, who is diabetic, claims he also reported dizziness and "made it clear that the pain only happen[ed]" when he was "eat[ing] carbs," and mainly … at night." (*Id.*)[2] After what Plaintiff defines as an "unreasonable delay," Dr. Nicholas "performed an EKG with alleged normal results." (*Id.*) During the EKG, Plaintiff also alleges an infection was discovered below his armpit. A nurse drained the wound, and he was prescribed antibiotics, but Dr. Nicholas "reacted as if [he] were dealing with a paper cut," and "saw no cause for alarm."

---

[2] Plaintiff attached to his Complaint several exhibits comprised of what appear to be excerpts of his medical records, including a "Release Summary" of medical treatment he received while he was held in County custody, *see* ECF No. 1-2 at 11–13, and more recent CAL Medical Assessments, Medication Administrative Records, Progress Notes, Health Care Services Request Forms, and Reasonable Accommodation Request Forms. (*See* ECF Nos. 4, 5.) "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

1  (*Id.* at 3–4.)

2  Four months later, after Plaintiff arrived at CAL in June 2023, he claims to have
3  discovered "educational material" indicating his February 2023 symptoms were potentially
4  signs of a mild heart attack. (*Id.* at 5.) He now seeks to hold Dr. Nicholas liable for failing
5  to conduct "in depth test[s]," x-rays, an MRI, and to prescribe a blood thinner. (*Id.* at 6.)

6  In a declaration dated October 4, 2024, two months after Plaintiff signed the
7  Complaint (*see* ECF No. 1 at 8), Plaintiff also asserts that Dr. Nicholas "offered to give
8  [him] insulin as a treatment to diabetes" when Plaintiff's blood "sugars were averaging
9  160," despite insulin allegedly being "linked to dead man syndrome, or diabetics dying in
10 [their] sleep because the sugar level gets too low." (ECF No. 6 at 1.) Plaintiff asserts that
11 this further demonstrates Dr. Nicholas's alleged "mal-intent and deliberate indifferen[ce]."
12 (*Id.* at 2.)

13  **C.   Discussion**

14  Plaintiff claims both his Eighth and Fourteenth Amendment right to medical care
15 were violated by what he describes as Dr. Nicholas's "callous and Marquis de Sade sadistic
16 dismiss[al] of [his] complaints." (ECF No. 1 at 3, 6.) Because he alleges he was housed in
17 San Diego County Jail while awaiting trial at the time of his alleged injury, however, the
18 Due Process Clause of the Fourteenth Amendment rather than the Cruel and Unusual
19 Punishments Clause of the Eighth Amendment governs the Court's analysis. *See Bell v.*
20 *Wolfish*, 441 U.S. 520, 535 n.16 (1979) (noting that the Due Process Clause of the
21 Fourteenth Amendment is applicable to claims of pre-trial detainees rather than the Eighth
22 Amendment because "Eighth Amendment scrutiny is appropriate only after the State has
23 complied with the constitutional guarantees traditionally associated with criminal
24 prosecutions."); *see also Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir.
25 2016) ("Eighth Amendment protections apply only once a prisoner has been convicted of
26 a crime, while pretrial detainees are entitled to the potentially more expansive protections
27 of the Due Process Clause of the Fourteenth Amendment.").

28  An objective standard applies to constitutional claims of inadequate medical care

brought under the Fourteenth Amendment. *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). A plaintiff must allege:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment]; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Sandoval v. County of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021) (citing *Gordon*, 888 F.3d at 1125). To satisfy the third element, the plaintiff must show that the defendant's actions were "objectively unreasonable," which requires showing "more than negligence but less than subjective intent – something akin to reckless disregard." *Gordon*, 888 F.3d at 1125 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)). Objective reasonableness necessarily "turn[s] on the facts and circumstances of each particular case." *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). Still, "[t]he 'reckless disregard' standard is a formidable one." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 636 (9th Cir. 2021) (citation omitted).

The Court finds nothing in Plaintiff's description of Dr. Nicholas's February 2023 response to his complaints of chest pain nor in the treatment of his infection to plausibly suggest Nicholas made any intentional decisions that put Plaintiff at "substantial risk of suffering serious harm" while he was in pretrial custody. *Gordon*, 888 F.3d at 1125. Instead, Plaintiff admits Nicholas took reasonable available measures to abate the risk of a potential heart attack by performing an EKG in response to his complaints of "flexing chest pain" and his reports of "light[-]headed dizziness." (ECF No. 1 at 3.) Plaintiff reports an "unreasonable delay" in Nicholas's authorization of the EKG, but he fails to allege any injury as a result of the allegedly deferred diagnostic testing—in fact, he acknowledges the EKG showed "normal results." (*Id.*) A mere delay in receiving medical treatment, without more, does not constitute "deliberate indifference," unless the plaintiff can show that the

delay caused serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990); *see also Cravotta v. County of Sacramento*, 717 F. Supp. 3d 941, 955 (E.D. Cal. 2024) ("[A] delay in receiving medical care, without more, is insufficient to state a claim against a jailor for deliberate indifference unless the plaintiff can show that the delay in treatment harmed him.") (citation omitted).

Further, while Plaintiff claims an infection under his arm was discovered while Dr. Nicholas conducted the EKG, he does not allege to have made any prior complaints to Dr. Nicholas regarding infection. He also concedes an unidentified nurse treated his wound and that he was prescribed antibiotics after its discovery. (ECF No. 1 at 3.) These allegations altogether fail to plausibly show Dr. Nicholas's course of treatment was "objectively unreasonable." *Gordon*, 888 F.3d at 1125.

Even if the Court were to liberally construe Plaintiff's later-filed Declaration (ECF No. 6) as part of the Complaint, its contents would not change the Court's analysis. Plaintiff asserts that Dr. Nicholas "offered to give [him] insulin as a treatment to diabetes" when Plaintiff's blood "sugars were averaging 160," despite insulin allegedly being "linked to dead man syndrome, or diabetics dying in [their] sleep because the sugar level gets too low." (*Id.* at 1.) These assertions do not adequately allege that Dr. Nicholas's actions were "objectively unreasonable" or put Plaintiff at "substantial risk of suffering serious harm" while he was in pretrial custody. *Gordon*, 888 F.3d at 1125.

In fact, while Plaintiff summarily characterizes Dr. Nicholas's course of care as "dismissive" and "callous" in his Complaint, the Release Summary he attaches as an exhibit, comprised of excerpts of his medical complaints and treatment dispositions while he was in County custody from September 2022 through April 2023, shows he was treated no fewer than eleven times for various complaints and ailments, including uncontrolled diabetes (for which he refused insulin and blood draws), a yellow toenail, bugs in his beard, weight loss, prescription eye glasses, and dry lips. (*See* ECF No. 1 at 4; *cf.* ECF No. 1-2 at 11–13.) When determining whether a complaint states a claim upon which relief can be granted, a court is not "required to accept as true allegations that contradict exhibits

attached to the Complaint[,] matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Iqbal*, 556 U.S. at 678.

For these reasons, the Court finds Plaintiff's Complaint fails to state a claim upon which relief can be granted and requires *sua sponte* dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121; *see also Hopper v. County of Riverside*, No. 18-01277-JAK (DFM), 2018 WL 6092563, at *4 (C.D. Cal. Nov. 20, 2018) (*sua sponte* dismissing civil detainee's claims that medical official performed only a "perfunctory physical examination," "declined to order diagnostic tests," and "disregarded complaints of pain" as insufficient to meet Fourteenth Amendment's objective deliberate indifference standards pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A).

### III.  CONCLUSION

Accordingly, the Court:

1. **GRANTS** Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF Nos. 2, 3).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $1.64 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward to the Clerk of the Court whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which

1  relief can be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b); and

2      5.    **GRANTS** Plaintiff 45 days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in the Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: November 18, 2024

Hon. William Q. Hayes
United States District Court